**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                         Case No. 10-31030

MISTY CAROL KENNEDY

       Debtor

MISTY CAROL KENNEDY

       Plaintiff/Counter-Defendant

    v.                                     Adv. Proc. No. 10-3048

ACCESS GROUP LOAN SERVICING

       Defendant/Counter-Plaintiff

KEY BANK and EDUCATIONAL CREDIT
MANAGEMENT CORPORATION

       Defendants

**MEMORANDUM ON JOINT
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**APPEARANCES:**    ANDERSON & ANDERSON
                              Clinton R. Anderson, Esq.
                              508 West 2nd North Street
                              Morristown, Tennessee 37814
                              Attorney for Debtor/Plaintiff

                              CHAMBLISS, BAHNER & STOPHEL, P.C.
                              Bruce C. Bailey, Esq.
                              Theresa Light Critchfield, Esq.
                              1000 Tallan Building
                              Two Union Square
                              Chattanooga, Tennessee 37402
                              Attorneys for Defendant Educational
                                Credit Management Corporation

SHARON FRANKENBERG, ESQ.
  Post Office Box 31585
  Knoxville, Tennessee  37930
  Attorney for Defendant/Counter-Plaintiff
    Access Group Loan Servicing

WELTMAN, WEINBERG AND REIS, CO., LPA
  John L. Day, Esq.
  525 Vine Street, Suite 800
  Cincinnati, Ohio  45202
  Attorneys for Defendant Key Bank

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

The Plaintiff filed the Complaint to Determine Dischargeability of Student Loans on June 14, 2010, asking the court for a determination that it would impose an undue hardship for her to repay her student loans owed to the Defendant/Counter-Plaintiff, Access Group Loan Servicing,[1] and the Defendants, Educational Credit Management Corporation (ECMC) and Key Bank. She seeks an order granting her a full or partial discharge of those loans pursuant to 11 U.S.C. § 523(a)(8) (2006). The Answer and Counterclaim of Access Group Loan Servicing was filed on July 19, 2010, and the Answer to Adversary Complaint was filed by ECMC on August 24, 2010.[2]

Presently before the court is the Joint Motion for Summary Judgment filed by the Defendants, Access Group Loan Servicing and ECMC on December 9, 2010, which was accompanied by a Statement of Undisputed Facts in Support of Joint Motion for Summary Judgment (Statement of Undisputed Facts) and a brief as required by E.D. Tenn. LBR 7056-1, and is supported by the deposition of the Plaintiff taken on November 9, 2010, and the Loan History for the Plaintiff's student loan obligations as calculated by the National Student Loan Debt System. The Plaintiff filed her Response to Motion for Summary Judgment (Response) on December 27, 2010, supported by the Plaintiff's 2009 federal tax return and her Schedule J - Current Expenditures of Individual Debtor(s) filed in her bankruptcy case on March 5, 2010. The Plaintiff did not file a response to the Statement of Undisputed Facts and, pursuant to E.D. Tenn. LBR 7056-1(b), "the material facts set forth in the [movants'] statement will be deemed admitted." *See also* FED. R. CIV. P. 56(e)(2).

---

[1] In its Answer and Counterclaim filed on July 19, 2010, and in the Joint Motion for Summary Judgment, Access Group Loan Servicing identifies itself as Access Group, Inc. Because the Plaintiff named Access Group Loan Servicing as the Defendant in her Complaint, it is this designation that will be used by the court throughout this Memorandum.

[2] ECMC is a party to this adversary proceeding pursuant to an Order Granting Educational Credit Management Corporation's Motion to Intervene and for Substitution entered on September 3, 2010, wherein it was substituted for Massachusetts Higher Education Corporation d/b/a American Student Assistance.

3

Moreover, the Response was not accompanied by a brief in support of the Plaintiff's opposition, as required by E.D. Tenn. LBR 7007-1.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(I) (2006).

# I

The Plaintiff filed the Voluntary Petition commencing her Chapter 7 bankruptcy case on March 5, 2010, and she received a general discharge of her debts on June 17, 2010.  Pursuant to the Complaint filed on June 14, 2010, she avers that she earns $1,200.00 monthly, and it would be an undue hardship for her to repay her student loan obligations owed to the Defendants or, in the alternative, that at least a portion of the student loans were discharged.  The Defendants, Access Group Loan Servicing and ECMC (collectively referred to as Defendants), filed the Joint Motion for Summary Judgment, and the court's determination herein applies solely to those Defendants.  The Answer of Defendants [sic], KeyBank ("Key") was filed on September 17, 2010; however, since it has not joined in this Motion for Summary Judgment, trial of the adversary proceeding as to that Defendant remains set for January 25, 2011.

In the Joint Motion for Summary Judgment, the Defendants argue that the undisputed facts show that the Plaintiff cannot prove that payment of her student loan obligations is an undue hardship as required by 11 U.S.C. § 523(a)(8), that she can maintain a minimal standard of living, that her circumstances are too recent to prove a future inability to make payments while her present inability to pay is the direct result of freely-made decisions, and that she has not made a good faith attempt to repay her student loans.  In her Response, the Plaintiff argues that her income is below

4

the federal Department of Health and Human Services poverty guidelines, that she is making a good faith effort to get her law practice going, that she has attempted to repay the loans, and that she should not be required to prove the required elements for undue hardship under § 523(a)(8) "in her pre-trial discovery deposition, nor by affidavit."

## II

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, revised effective December 1, 2010, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" with the procedures concerning summary judgment now requiring the following:

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(a) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure).[3]

When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine dispute for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). As movants, the Defendants bear the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material fact, such that the claims or defenses alleged are factually unsupported, entitling them to judgment as a matter of law. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986); *Owens Corning v. National Union Fire Insurance Company*, 257 F.3d 484, 491 (6th Cir. 2001).

The burden then shifts to the Plaintiff, as the nonmoving party, to prove that there are genuine disputes of material fact for trial; however, she may not rely solely upon allegations or denials contained in the pleadings, as reliance upon a "mere scintilla of evidence in support of the non-moving party will not be sufficient." *Nye v. CSX Transportation, Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). The facts and all resulting inferences are viewed in a light most favorable to the non-movant, with the court deciding whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

---

[3] Pursuant to the Notes of Advisory Committee on 2010 amendments, the standard for granting summary judgment has not changed, and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]."

6

*Anderson*, 106 S. Ct. at 2512. Nevertheless; "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 106 S. Ct. at 1356 (citations omitted).

Having reviewed the Joint Motion for Summary Judgment, the pleadings, the Statement of Undisputed Facts, the Response, and the supporting documentation filed by all parties, and for the reasons set forth herein, the court finds that, even taking the record in a light most favorable to the Plaintiff, there are no genuine disputes as to any material fact under which she could establish that it would be an undue hardship to pay her student loans. The Defendants, Access Group Loan Servicing and ECMC, are each entitled to summary judgment, and the Complaint shall be dismissed as to each of these Defendants. The student loan obligations owed to Access Group Loan Servicing and ECMC by the Plaintiff are nondischargeable debts and were not discharged on June 17, 2010.

### III

A determination of the dischargeability of a debt is determined under the direction of 11 U.S.C. § 523(a), which states, in material part, that an individual debtor does not receive a discharge under 11 U.S.C. § 727(a) (2006)[4] of the following kind of debt:

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –

---

[4] Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title," 11 U.S.C. § 727(b) (2006), accomplishing the goal of Chapter 7 to relieve "honest but unfortunate" debtors of debt and allow a "fresh start" through discharge. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934)).

7

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made . . . in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).

The Bankruptcy Code does not define undue hardship, leaving the determination to the courts. The Sixth Circuit, as well as the majority of courts, have adopted a three-pronged test, requiring a debtor seeking to establish that repayment of all or a portion of student loan debt imposes an undue hardship to demonstrate the following:

> "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans."

*Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2004) (quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). Because student loans enjoy a presumption of nondischargeability, the Plaintiff bears the burden of establishing by proving all three prongs of the *Brunner/Olyer* test, that repayment will impose an undue hardship by a preponderance of the evidence, and the failure to prove any one of the three will result in a finding that repayment does not impose an undue hardship. *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 358 (6th Cir. 2007).

8

The record evidences that the Plaintiff, who is single and has no dependents, attended Appalachian School of Law, receiving her Juris Doctorate in May 2005, after which she took the bar examination, and was licensed to practice law in the State of Tennessee in October 2005. STMT. OF UNDISP. FACTS at ¶¶ 1, 27; KENNEDY DEPO. at pg. 7, ln. 11-20; pg. 16, ln. 9 - pg. 17, ln. 3; pg. 38, ln. 6-8; pg. 45, ln. 3-4. While completing her education, the Plaintiff incurred subsidized and unsubsidized federally funded student loans as well as private student loan obligations from the Defendants, which she consolidated in August 2006. STMT. OF UNDISP. FACTS. at ¶¶ 2-6; STMT. OF UNDISP. FACTS EX. B; KENNEDY DEPO at pg. 47, ln. 18 - pg. 48, ln. 16; pg. 50, ln. 23 - pg. 51, ln. 4. As of July 29, 2010, the outstanding balance owed by the Plaintiff on her student loan obligations to the Defendants was $90,231.00. STMT. OF UNDISP. FACTS at ¶ 7; STMT. OF UNDISP. FACTS EX. B.

Following her graduation from law school, the Plaintiff moved to Knoxville and, in the summer of 2006, worked temporary jobs through a temporary agency. STMT. OF UNDISP. FACTS at ¶ 9; KENNEDY DEPO. at pg. 6, ln. 19 - pg. 7, ln. 13. She was thereafter employed by America One Companies as its in-house counsel from July 2007 through March 2008, earning approximately $600.00 to $700.00 weekly. STMT. OF UNDISP. FACTS at ¶ 10; KENNEDY DEPO. at pg. 5, ln. 19 - pg. 6, ln. 18. After being laid off from that position, the Plaintiff moved to Tazewell and began working for minimum wage at the Stone Law Office in March 2008, where she remained until September 2008, when she opened her own law office, Kennedy Law Office. STMT. OF UNDISP. FACTS at ¶ 13; KENNEDY DEPO. at pg. 5, ln. 9-24; pg. 18, ln. 10-24. The Plaintiff's work consists primarily of court-appointed guardian ad litem cases; however, she has also recently been appointed to child support cases and has taken a few divorce, custody, and probate cases and drafted wills for

9

private clients. STMT. OF UNDISP. FACTS at ¶¶ 14, 16; KENNEDY DEPO. at pg. 8, ln. 13-22; pg. 9, ln. 4-14; pg. 12, ln. 20-21. She earns $40.00 per hour for her guardian ad litem cases, increasing to $50.00 per hour for court appearances, $40.00 per hour for the child support cases, and charges $500.00 for divorce cases. KENNEDY DEPO. at pg. 8, ln. 23 - pg. 9, ln. 16; pg. 13, ln. 10-16.

The court is first called upon to assess the Plaintiff's standard of living and determine if she can afford to repay her loans while maintaining a minimal standard of living. "The essence of the minimal standard of living requirement 'is that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of . . . student loan creditor(s).'" *Grove v. Educ. Credit Mgmt. Corp. (In re Grove)*, 323 B.R. 216, 223 (Bankr. N.D. Ohio 2005). Accordingly, the analysis "must necessarily center around two considerations: (1) the debtor's income; and (2) those expenses which are necessary for the debtor to meet his or her basic needs." *Flores v. U.S. Dep't of Educ. (In re Flores)*, 282 B.R. 847, 853 (Bankr. N.D. Ohio 2002). The bankruptcy court must "ascertain what amount is minimally necessary to ensure that the [debtor and her] dependents' needs for care, including food, shelter, clothing, and medical treatment are met." *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1151 (6th Cir. 1996).

In order to meet the minimal standard of living factor, debtors are required to "make some major sacrifices, both personal and financial, with respect to their current style of living." *Flores*, 282 B.R. at 854. "While a minimal standard of living does not mandate that a debtor live in poverty to qualify for a discharge of their student-loan obligation, it does mean that the debtor is expected to do some financial belt-tightening and forego amenities to which he may have become accustomed." *Campton v. United States Dep't of Educ. (In re Campton)*, 405 B.R. 887, 891 (Bankr.

N.D. Ohio 2009). Although a debtor earning a modest income and living on an unbalanced budget with no unnecessary or frivolous expenses may be discharged based upon an undue hardship, *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 438 (6th Cir. 1998), expenditures of items such as internet, cell phones, cable or satellite television, gym or other memberships, and cigarettes "are generally unnecessary to maintain a minimum standard of living and . . . the failure to minimize or eliminate these expenditures [may] not demonstrate a good-faith effort to minimize expenses." *Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 325 (4th Cir. 2008).

The analysis is whether the Plaintiff can meet a minimal standard of living, based upon her current income, after paying only those expenses which are necessary for meeting her basic needs. Based upon the record, the court finds that the Plaintiff has satisfied the first prong of the *Brunner/Oyler* test. The proof shows that the Plaintiff's income from her law practice in 2009 was $17,528.00, translating to approximately $1,460.67 monthly, of which $14,184.00 was derived from her work as a court-appointed guardian ad litem. RESP. EX. A; KENNEDY DEPO. at pg. 12, ln. 7-15; STMT. OF UNDISP. FACTS at ¶ 15. In her deposition, the Plaintiff testified that during 2010, in addition to her guardian ad litem work, she had been appointed in four child support cases paying $40.00 per hour and averaging an hour per month, and that she expected those appointments to continue. KENNEDY DEPO. at pg. 12, ln. 16 -24; pg. 13, ln. 7-25; pg. 29, ln. 7-9; STMT. OF UNDISP. FACTS at ¶ 16. She has no employees and does her own billing and bookkeeping. KENNEDY DEPO. at pg. 20, ln. 21-25.

11

As for her expenses, the Plaintiff listed the following in her Schedule J:

| | |
|---|---|
| rent | $ 500.00 |
| electric and heating fuel | $ 167.00 |
| telephone | $ 51.00 |
| internet | $ 48.00 |
| food | $ 200.00 |
| clothing | $ 50.00 |
| transportation | $ 160.00 |
| recreation, clubs, entertainment | $ 25.00 |
| charitable contributions | $ 8.00 |
| renter's insurance | $ 20.00 |
| auto insurance | $ 56.25 |
| taxes | $ 128.33 |
| regular business expenses | $ 163.00 |
| Average Monthly Expenses | $1,606.58 |

RESP. EX. B. Of these, the Plaintiff's rent, which includes her office space and the apartment above it where she lives, and the telephone represent both personal and business expenditures. KENNEDY DEPO. at pg. 19, ln. 5 - pg. 20, ln. 10; STMT. OF UNDISP. FACTS at ¶¶ 33-35. As for amenities or extras, the Plaintiff testified that she has a cell phone which is paid by her parents, that she travels to Knoxville for dates which her boyfriend pays for, that she eats out from fast food restaurants approximately five times per week, and that she pays to see movies in Middlesboro, Kentucky with friends perhaps twice monthly. KENNEDY DEPO. at pg. 20, ln. 11-14; pg. 27, ln. 6-18; STMT. OF UNDISP. FACTS at ¶¶ 28-30, 35. Nevertheless, the Plaintiff's food and entertainment expenses are moderate to low for an individual without dependents, and her budget leaves very little – if any – room for belt-tightening. Even cutting out the monthly payments for the debts she discharged, the $25.00 monthly recreation expense, and a portion of the transportation expense would yield a minimal difference in light of the remainder of the Plaintiff's sparse budget, and based upon her 2009 income as reflected on her tax return, the Plaintiff's income would still average less per month

than her monthly expenses. Therefore, the Plaintiff has sufficiently shown that she cannot afford to pay her student loan obligations while maintaining a minimal standard of living based upon her current income and expenses.

Notwithstanding that the Plaintiff has satisfied the first prong, the court also finds that, based upon the same record, no reasonable trier of fact could find that the Plaintiff meets the second prong of the *Brunner/Oyler* test, which requires the court to consider the existence of "additional circumstances" indicating that her current financial circumstances are beyond her control and are likely to continue into the future. To satisfy this prong, the Plaintiff must establish that she has done everything within her power to improve her distressed financial state, that the hardship she is experiencing is "undue" and not the "garden variety financial hardship experienced by all debtors who file for bankruptcy relief[,]" and that the circumstances are clearly out of her control. *Grant v. United States Dep't of Educ. (In re Grant)*, 398 B.R. 205, 212 (Bankr. N.D. Ohio 2008).

> Such circumstances must be indicative of a "certainty of hopelessness, not merely a present inability to fulfill financial commitment." They may include illness, disability, a lack of useable job skills, or the existence of a large number of dependents. And, most importantly, they must be beyond the debtor's control, not borne of free choice. Choosing a low-paying job cannot merit undue hardship relief.

*Oyler*, 397 F.3d at 385-86 (citations omitted); *see also Mosko*, 515 F.3d at 325 (holding that it is not an undue hardship to expect debtors to work second jobs to supplement insufficient income); *Barrett*, 487 F.3d at 359 ("[T]he most important factor in satisfying the second prong is that the 'additional circumstances' must be 'beyond the debtor's control, not borne of free choice.'"); *Healey v. Mass. Higher Educ. (In re Healey)*, 161 B.R. 389, 395 (E.D. Mich. 1993) ("A resolute

determination to work in one's field of dreams, no matter how little it pays, cannot be the fundamental standard from which 'undue hardship' . . . is measured.").

> The center of gravity of the second prong of the *Brunner* test is permanency or, what can be termed, an involuntary inability to improve one's financial circumstances. Stemming from this principle, this Court has consistently espoused the maxim . . . that, (1) a debtor's distressed state of financial affairs must be the result of events which are clearly out of their control, and (2) the debtor must have done everything within their power to improve their financial situation. Although . . . *sine quo non*, an often used explanation, and a common paradigm for an "undue hardship" case, is the existence of a permanent disability, whether physical and/or mental.

*Campton*, 405 B.R. at 892 (quoting *Storey v. Nat'l Enter. Sys. (In re Storey)*, 312 B.R. 867, 871-72 (Bankr. N.D. Ohio 2004) (external citations omitted)).

Here, the Plaintiff does not have any medical, physical, or mental disabilities, any illnesses, or any medical or physical limitations preventing her from obtaining some sort of employment. The record reflects that the Plaintiff suffers mild to moderate depression, having being diagnosed in 2001 following the law school shootings at Appalachian State and the events of 9/11 that year, and she testified that the depression sometimes affects her ability to get up or get motivated to practice law. KENNEDY DEPO. at pg. 16, ln. 4 - pg. 17, ln. 3; pg. 37, ln. 17 - pg. 38, ln. 3. However, she takes two medications to treat her depression and does not have any medical disabilities affecting her ability to work. STMT. OF UNDISP. FACTS at ¶ 36; KENNEDY DEPO. at pg. 15, ln. 23 - pg. 16, ln. 3; pg. 36, ln. 25 - pg. 37, ln. 16; pg. 44, ln. 20 - pg. 45, ln. 2.

Additionally, and more significantly, the Plaintiff has not fully maximized her earning potential and cannot prove by a preponderance of the evidence that her financial circumstances are beyond her control. During her deposition, the Plaintiff testified that if she began making

14

$35,000.00 per year again, she could "probably" make payments on her loans. KENNEDY DEPO. at pg. 40, ln. 24 - pg. 41, ln. 5; STMT. OF UNDISP. FACTS at ¶ 19. However, the Plaintiff also testified that she only works 35 hours per week, of which she only bills approximately 11 hours, spending the remaining 24 hours in the office filing, doing paperwork, speaking with people on the phone, paying bills, and the like. KENNEDY DEPO. at pg. 29, ln. 10 - pg. 30, ln. 18; STMT. OF UNDISP. FACTS at ¶ 15. She is licensed to practice law only in the State of Tennessee, but not in the federal court system, and she has no intention in the foreseeable future of becoming admitted to practice in Kentucky. KENNEDY DEPO. at pg. 38, ln. 9-17.

Similarly, the Plaintiff stated that she has not sought any other employment outside her law practice to earn extra money and that although she would be willing to, she has not considered getting a second job to make ends meet because she has not reached that point yet. KENNEDY DEPO. at pg. 9, ln. 17 - pg. 10, ln. 3; pg. 41, ln. 24 - pg. 42, ln. 6; pg. 43, ln. 9 - pg. 44, ln. 4; STMT. OF UNDISP. FACTS at ¶ 26. She attributes her limited potential to make more money in the future to being in a small town, which provides "a lower economic situation," also citing as reasons the fact that she does not know many people in the community, is "an outsider," has limited knowledge of the practice of law, and does not have a "mentor." KENNEDY DEPO. at pg. 39, ln. 15 - pg. 40, ln. 11; pg. 41, ln. 11-17; STMT. OF UNDISP. FACTS at ¶¶ 20-21.

The Plaintiff testified that she decided to move to Tazewell because it was halfway between her hometown, Cumberland, Kentucky, where her parents live, and Knoxville, where her boyfriend lives and where she liked to shop and spend time, and it is close enough for her to meet up with friends in Middlesboro, Kentucky. KENNEDY DEPO. at pg. 23, ln. 4 - pg. 24, ln. 1; pg. 27, ln. 12-18.

15

When asked about the possibility of returning to her hometown, Cumberland, Kentucky, where she has many contacts, her father is a magistrate, and her parents own two car washes and rental storage units, the Plaintiff agreed that would be an option "if [she] wanted to move back home[.]" KENNEDY DEPO. at pg. 8, ln. 6-7; pg. 24, ln. 2-18; pg. 40, ln. 12-18; STMT. OF UNDISP. FACTS at ¶ 22. Additionally, the Plaintiff also discounted the option when questioned about moving to a bigger city, stating that she "tried that in Knoxville and [] wasn't able to get a job with a law firm there. They only offered secretarial positions whenever I did interview." KENNEDY DEPO. at pg. 40, ln. 19-23.

Although the court is not by any means suggesting that the Plaintiff should return to her hometown or move elsewhere, the fact remains that her financial difficulties stem, in large part, from her own personal choices. She has chosen to live in Tazewell, which is a very small community where she does not have contacts and feels like an "outsider," because it is halfway between her hometown where her family lives and Knoxville where her boyfriend lives. She has chosen to open her own law office, where she works only 35 hours per week, while not seeking additional or supplemental employment to increase her income. Additionally, the record indicates that the Plaintiff's hardships will not necessarily persist in the future. The Plaintiff testified during her deposition that, in order to increase her law practice, she took out an advertisement in the yellow pages and has printed business cards which she asks clients to take and pass along. KENNEDY DEPO. at pg. 11, ln. 9-20; pg. 28, ln. 24 - pg. 29, ln. 3. She has also expanded her practice to include court-appointed support cases and anticipates picking up additional ones. KENNEDY DEPO. at pg. 30, ln. 23 - pg. 31, ln. 3; STMT. OF UNDISP. FACTS at ¶ 16. In essence, the Plaintiff's circumstances are of the "garden variety" hardships facing many debtors in Chapter 7, are not sure to persist in the

16

future, and are not out of her control. The existence of the Plaintiff's financial circumstances do not, therefore, evidence an undue hardship, and the Defendants are entitled to summary judgment that the student loan obligations owed to them by the Plaintiff are nondischargeable.[5]

Because there is no genuine dispute of any material facts that would enable the Plaintiff to meet her burden of proof with respect to the second *Brunner/Oyler* factor, the court finds that it is not an undue hardship to require her to repay her student loan obligations to the Defendants, Access Group Loan Servicing and ECMC, and they are nondischargeable debts owed by the Plaintiff. Furthermore, because it has been established that repayment would not be an undue hardship, the court may not exercise its equitable powers under 11 U.S.C. § 105(a) (2006) to grant a partial hardship discharge. *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 624 (6th Cir. 2004).

A Judgment consistent with this Memorandum will be entered.

FILED: January 11, 2011

> BY THE COURT
>
> /s/ RICHARD STAIR, JR.
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE

---

[5] The *Brunner/Oyler* test requires that all three prongs must be satisfied. Based upon the Plaintiff's inability to prove that her financial circumstances are likely to persist and beyond her control, it is not necessary for the court to move to the third prong, which focuses on whether the Plaintiff has made a good faith effort to repay her loans.

17